**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
JEFFREY PIANKA and PEDRO CRUZ,:
                              :
     Plaintiffs,              :
                              :
v.                            :     Civil No. 3:01CV00153(AWT)
                              :
CHRISTOPHER MANNING, CARLOS   :
OCASIO and FELIX ORTIZ,       :
                              :
     Defendants.              :
                              :
------------------------------x
```

## RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiffs, Jeffrey Pianka ("Pianka") and Pedro Cruz ("Cruz"), bring this civil rights action pursuant to 42 U.S.C. § 1983 against the defendants, City of Hartford police officers Christopher Manning ("Manning"), Carlos Ocasio ("Ocasio") and Felix Ortiz ("Ortiz"). The Complaint sets forth five causes of action. The First Cause of Action is a 42 U.S.C. § 1983 claim that the defendants, inter alia, retaliated against the plaintiffs because they engaged in speech protected by the First Amendment, unlawfully arrested and detained the plaintiffs, and maliciously prosecuted the plaintiffs. The Second Cause of Action is a
42 U.S.C. § 1983 claim that Ocasio and Ortiz unlawfully entered Cruz's dwelling in violation of the Fourth Amendment. The Third Cause of Action is a 42 U.S.C. § 1983 claim that the defendants, inter alia, used excessive force against the plaintiffs in

violation of the Fourth Amendment.  The Fourth Cause of Action sets forth common law claims for trespass, assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress and malicious prosecution.  Finally, the Fifth Cause of Action sets forth claims for violations of Article I, sections 4, 5, 7 and 9 of the Connecticut Constitution.

The defendants have moved for summary judgment as to certain of the plaintiffs' claims.  For the reasons set forth below, the defendants' motion is being granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

At approximately 10:30 p.m. on February 7, 1998, defendants Ocasio and Ortiz responded to an anonymous complaint of a domestic disturbance in progress on the second floor of a multi-family apartment building.  When Ocasio and Ortiz approached Cruz's apartment, the door was open and the apartment was quiet and dark.  These are the only undisputed material facts, and as noted below, the plaintiffs contend that at the time Ocasio and Ortiz responded, they knew there was no domestic disturbance in progress.

Ocasio and Ortiz claim[1] that an unidentified male with keys to the building allowed them to enter the building.  This

---

[1] The court notes that the defendants' statement of undisputed facts consists of only five brief paragraphs, but because the defendants have asserted that they are entitled to qualified immunity, the court has considered the entire record.

individual indicated that there was an altercation on, and directed them to, the second floor, but he indicated that he did not want to get involved.

Ocasio and Ortiz claim that they encountered Glorimel Rosa ("Rosa"), Cruz's live-in girlfriend, as she ran out of the apartment. She was crying and seemed hysterical and flustered. The officers stopped her. Ortiz noticed that she had redness about her face, consistent with assault. In an attempt to evaluate the situation, the officers asked her what had occurred. They claim that she was rambling and yelling that the suspect had come over to a friend's house and dragged her out of that house, and that he had hit her and stated that he wanted to kill her. She mentioned something about her baby. The officers asked Rosa whether the suspect was still in her apartment. Prior to running out of the building, Rosa warned the officers not to go into the apartment because the plaintiff was crazy.

Ocasio and Ortiz contend that they proceeded to the apartment because Rosa had mentioned something about her baby. Ocasio and Ortiz claim they wanted to investigate the situation and ensure the safety of potential victims pursuant to their legal obligations under Connecticut's family violence act. The door to the apartment was open. It was dark and quiet, except for a light in what looked like a kitchen three rooms down. The officers claim that they announced that they were police officers and asked whether anyone was home. They heard no response, so

3

they proceeded to enter.  The officers were soon confronted by
Cruz's rapidly approaching silhouette.  Ocasio and Ortiz claim
that Cruz demanded a search warrant and became increasingly
hostile and belligerent.  The defendants had to tell Cruz several
times to calm down and step back.  Cruz tried to push the
officers away, preventing them from reaching the kitchen area,
after which he punched Ocasio with a closed fist.  A struggle
ensued as the officers attempted to arrest Cruz.

Cruz contends that Ocasio and Ortiz knew that there was no
domestic disturbance in progress once they entered the building
because Rosa said nothing to Ocasio and Ortiz when she
encountered them as she descended the stairs upon their arrival,
and there was no indication she been a victim of domestic
violence.  Rosa has testified that she was walking down the
stairs at a normal pace, not too fast and not too slow; that she
was crying but was not hysterical and was not yelling things and
said nothing at all to the officers.  She testified that her face
was not swollen and she did not have a puncture wound on her
hand.  She also testified that she stood and watched the officers
for a short while and then proceeded downstairs, where she
remained.

Cruz contends that when the officers arrived at the
apartment, there was no sign of any domestic disturbance.

Cruz claims that Ocasio and Ortiz entered his apartment
uninvited and with their nightsticks drawn.  Cruz rapidly

approached them and asked them what they were doing there and
whether they had a warrant.  When the defendants conceded that
they did not have a warrant, Cruz told them to get out of the
apartment.  He pointed in the direction of the public hallway,
and requested that they discuss the matter outside.  Ocasio and
Ortiz refused to leave.  Cruz claims that Ocasio then struck him
in the mouth with a nightstick.  Cruz staggered backwards.
Ocasio and Ortiz then viciously beat him and sprayed him with
pepper spray.

The police incident report reflects that Cruz was arrested
and charged with two counts of threatening in violation of
Connecticut General Statutes § 53a-62, two counts of assault on a
peace officer in violation of Connecticut General Statutes § 53a-
167c, two counts of conspiracy to commit an assault on a peace
officer in violation of Connecticut General Statutes §§ 53a-48
and 53a-167c, risk of injury to a minor in violation of
Connecticut General Statutes § 53-21, disorderly conduct in
violation of Connecticut General Statutes § 53a-182, and assault
in the third degree as to Rosa in violation of Connecticut
General Statutes § 53a-61.

Cruz ultimately went to trial on three charges: assault in
the third degree as to Rosa, assault of a peace officer, and
interfering with an officer.  The jury acquitted Cruz of assault
in the third degree and interfering with an officer, but
convicted him of assault on a peace officer.  Cruz appealed the

conviction, and the conviction was affirmed.

As to Pianka, the defendants claim that on several occasions, Pianka entered the apartment while the officers were trying to subdue and handcuff Cruz. Pianka yelled at the officers to get out and to stop beating Cruz. The officers instructed Pianka to get out of the apartment. Ortiz approached Pianka, who took a swing at him and then fled. Pianka returned, grabbed Ortiz in an effort to pull him off of Cruz, and then fled again. Once Cruz was subdued and handcuffed, Ocasio instructed Manning to arrest Pianka, who was standing in the hallway, for interfering with police. The defendants claim that Pianka then attempted to flee, and that when he was grabbed, he resisted arrest and would not comply with requests to place his hands behind his back. Manning was able to cuff one hand, but Pianka made a fist with the other as if to strike him. A brawl ensued and, in an attempt to subdue Pianka by striking him on the shoulder with his baton, Manning struck Pianka's head instead. Pianka was taken to the hospital for treatment and subsequently charged, according to the police incident report, with interfering with an officer in violation of Connecticut General Statutes § 53a-167a, assault on a police officer in violation of Connecticut General Statutes § 53a-167c, conspiracy to commit assault on a peace officer in violation of Connecticut General Statutes §§ 53a-48 and 53a-167c, and reckless endangerment in violation of Connecticut General Statutes § 53a-64. Pianka went

6

to trial on two counts of interfering with an officer in violation of § 53a-167(a). He was acquitted on both charges.

Pianka claims that he came into the apartment and told Ocasio and Ortiz to stop beating Cruz. Ocasio told Pianka to "shut the fuck up" and ran after him with a nightstick. Pianka went downstairs. He let several officers into the building. Later, he was standing around downstairs. Someone (later identified as Manning) pushed him against the wall, hit him in the back of the head with a nightstick, beat him up and arrested him.

The defendants contend that although Manning was also at the scene, he did not arrest either plaintiff. The only evidence in the record on this point is that (1) when Manning arrived at the apartment, Ocasio was pulling Cruz out of the apartment and Manning assisted Ocasio in securing the handcuffs on Cruz and (2) Manning took Pianka into custody when he was instructed by Ocasio to do so on the grounds that Pianka had interfered with an officer.

## II.  **LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317,

7

322-23 (1986); <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. <u>See</u>, <u>e.g.</u>, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Donahue v. Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Heyman v. Commerce & Indus. Ins. Co.</u>, 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." <u>Anderson</u>, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is <u>both</u> genuine <u>and</u> related to a material fact. Therefore, the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine

8

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the non-movant's

9

evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the non-movant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997)(quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the non-movant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings because the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the non-movant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted).

Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.  If the non-movant fails to meet this burden, summary judgment should be granted.

"[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party . . . . Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

## III.  DISCUSSION

### A.  First Cause of Action: § 1983 First Amendment Retaliation

To prevail on a First Amendment retaliation claim, a plaintiff must prove that "(i) he has an interest protected by the First Amendment, (ii) the defendants' actions were motivated by or substantially caused by the plaintiff's exercise of that right and (iii) the defendants' actions chilled the exercise of those rights." Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001).  To survive summary judgment, "specific proof of improper motivation" must exist. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Officers will avoid liability, however, if they would have taken the same action regardless of any impermissible intent. See Greenwich Citizens Comm., Inc. v. Counties of Warren and Wash. Indus. Dev. Agency, 77 F.3d 26, 31-

11

32 (2d Cir. 1996).  Also, where officers "had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken."  <u>Curley</u>, 268 F.3d at 73.

### 1. Defendants Ocasio and Ortiz

Cruz's version of events is that Cruz asked Ocasio and Ortiz whether they had a warrant.  When they told him that they did not have one, Cruz told them to get out of the apartment, while pointing in the direction of the hallway, so they could discuss the matter outside the apartment.  Cruz contends that, in response, Ocasio and Ortiz viciously beat him.

Accepting Cruz's version of events, he has produced evidence that he has an interest protected by the First Amendment.

> [T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.  <u>City of Houston v. Hill</u>, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398.  Speech directed at police officers will be protected unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest."  <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 415 (2d Cir. 1999)(internal quotation marks and citations omitted).

<u>Kerman</u>, 261 F.3d at 242.  Cruz's merely demanding that the officers to go into the hallway so that the matter could be discussed there does not rise to the level of producing "a clear and present danger of a serious substantive evil."

The defendants argue that given Cruz's conduct at the time of the incident and the fact that there was probable cause to arrest him for assault on a peace officer, there was no violation

12

of his First Amendment rights, and that, in any event, the
defendants are entitled to qualified immunity.  However, the
basis for Cruz's First Amendment claim is that he exercised his
right to tell the officers that they were required to discuss the
matter in the hallway and that their response was to viciously
beat him.  If the finder of fact accepts Cruz's version of
events, Cruz can establish that the defendants' action were
motivated by, or substantially caused by, his exercise of his
First Amendment rights, and he can also establish that the
defendants' conduct in responding by viciously beating him
chilled the exercise of those rights.

The defendants argue that because there was probable cause
to arrest Cruz for assault on a peace officer, they should at
least prevail on the grounds of qualified immunity.  However, the
events which form the basis for Cruz's First Amendment
retaliation claim all preceded in time any conduct on Cruz's part
that gave rise to probable cause to arrest him for assault on a
peace officer; under Cruz's version of events, Ocasio and Ortiz
had retaliated against him prior to the point in time he engaged
in any conduct that gave the defendants probable cause to arrest
him.

As to the claim by Pianka, his version of events is that
when he came into the apartment and saw Ocasio and Ortiz beating
Cruz, he told them to stop and that in response Ocasio told
Pianka to shut up and ran after him with a night stick.  Pianka

fled.  Accepting Pianka's version of events, as opposed to the defendants' dramatically different version, Pianka also could establish a claim for First Amendment retaliation under the standard discussed above.

Accordingly, because genuine issues of material fact exist, even as to Ocasio's and Ortiz's claim for qualified immunity, their motion for summary judgment as to the plaintiffs' First Amendment retaliation claims is being denied.

### 2.   Defendant Manning

The plaintiffs fail to produce evidence of retaliatory intent on the part of defendant Manning.  Accepting the plaintiffs' version of events, Ocasio and Ortiz were the only defendants who were in the apartment at the time Pianka called for them to stop beating Cruz.  In addition, the only evidence is that Manning arrested Pianka only after he was instructed to do so by defendant Ocasio.  Thus, there is no evidence that could support a conclusion that Manning's actions were motivated by or substantially caused by either Cruz's or Pianka's exercise of First Amendment rights.

Accordingly, the defendants' summary judgment motion is being granted as to the First Amendment retaliation claims against defendant Manning.

**B.    First Cause of Action: § 1983 Unlawful Arrest and Detention and § 1983 Malicious Prosecution Claims by Cruz**

The defendants argue that they are entitled to summary judgment as to the § 1983 claims by Cruz for unlawful arrest and detention and malicious prosecution because Cruz was convicted by a jury on the charge of assault on a peace officer.  The defendants do not move for summary judgment as to Pianka's claims.

The defendants argue, correctly, that a plaintiff's conviction of the underlying offense is a defense to claims against police officers for unlawful arrest and detention and malicious prosecution.  See Cameron v. Fogarty, 806 F.2d 380, 388-89 (2d Cir. 1986).

However, in Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991), the court recognized that in cases where multiple charges are brought against the person arrested and the person is acquitted on some of the charges, each charge should be analyzed separately.  There, the court concluded that the district court erred in instructing a jury that a finding of probable cause supporting any one of three charges would preclude liability for malicious prosecution as to any of the other charges.  See id. See also Kent v. Katz, 312 F.3d 568, 578 (2d Cir. 2002)(Newman, J., concurring)("because Cameron so explicitly stated that the conviction defense applies where a person has been convicted of

the crime for which he was arrested, I agree that Kent's conviction for careless and negligent operation of a motor vehicle does not preclude his claim for false arrest on the DWI charge"); <u>Jenetka v. Dabe</u>, 892 F.2d 187, 190 (2d Cir. 1989)(noting that Jeneka had been charged with "two distinct offenses involving distinct allegations. . . .  The elements of each charge are different; neither charge is a lesser included offense of the either.")

The defendants argue that "any arrest stemming from the subject incident resulting in a conviction should provide a defense for false arrest or malicious prosecution pursuant to <u>Cameron</u>," (Defs.' Reply (Doc. No. 40) at 7), but that is not the rule articulated in <u>Cameron</u>.[2]  Moreover, Cruz makes it clear that he does not base these claims on the arrest and/or prosecution for assault on a peace officer.  Rather, he bases these claims on the other charges that were filed against him, and <u>Posr</u> and <u>Kent</u> make it clear that a conviction on one charge does not protect police officers who pile on additional charges without

_____

[2]In connection with this argument, the defendants assert in conclusory fashion that they are entitled to qualified immunity because they did not knowingly violate any clearly established constitutional or statutory rights of Cruz, citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), and <u>Warren v. Dwyer</u>, 906 F.2d 70, 74 (2d Cir. 1990).  However, <u>Cameron</u> was decided in 1986, <u>Jenetka</u> was decided in 1989, and <u>Posr</u> was decided in 1991.  While it may be that there are additional arguments the defendants can make with respect to certain of the charges that were filed against Cruz, they have not set forth any such arguments in their moving papers and thus have not met their initial burden at the summary judgment stage.

justification, which is what Cruz claims was done here.  There
are genuine issues of material fact as to whether that is what
occurred in this case, and thus the defendants have failed to
meet their burden of showing that they are entitled to summary
judgment on these claims.

Accordingly, the defendants' motion for summary judgment as
to Cruz's § 1983 claims for unlawful arrest and detention and
malicious prosecution are being denied.

**C.    Second Cause of Action: § 1983 Unlawful Entry**

Plaintiff Cruz claims that Ocasio and Ortiz unlawfully
entered his apartment.  Ocasio and Ortiz argue that exigent
circumstances existed, or alternatively, that they are entitled
to qualified immunity.

Warrantless entry into a dwelling is justified if officers
reasonably believe that they must render emergency aid and
assistance to a person in distress and in need of that
assistance.  See Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir.
1998).  If officers of reasonable competence could disagree as to
whether such circumstances existed, then the officers are
entitled to qualified immunity.  See id.

In Tierney, the court recognized the combustible nature of
domestic disputes, the significant possibility of serious injury
to the victims and the need for prompt assessment of often
ambiguous information.  See Tierney, 133 F.3d at 196-97.  Courts

17

accord "great latitude to an officer's belief that warrantless entry was justified . . . when the officer had <u>substantial</u> reason to believe that one of the parties to the dispute was in danger." <u>Tierney</u>, 133 F.3d at 197 (emphasis added).

The court agrees with the defendants that one must look at the knowledge the police officers had at the time they arrived on the scene.  <u>See</u> Defs.' Mem. (Doc. No. 27) at 8.  However, here the defendants take their statement of the material facts from the opinion of the Connecticut Appellate Court in <u>State of Connecticut v. Cruz</u>, 71 Conn. App. 190 (2002), which does not purport to give weight to the plaintiff's evidence but rather summarizes the facts in the light most favorable to the prosecution in that case[3], and from the police incident reports prepared by defendants Ocasio and Ortiz.  In making their argument that they are entitled to summary judgment on this claim, the defendants' disregard the plaintiffs' evidence, with one exception.

The one instance where the defendants do not disregard the plaintiffs' evidence is with respect to Cruz's statement that he had pushed Rosa, causing her to cry shortly before the arrival of the Ocasio and Ortiz.  However, the defendants are not entitled to rely on this evidence in support of their motion for summary

---

[3] The court prefaced its summary of the facts with the statement, "The jury reasonably could have found the following facts."  <u>State v. Cruz</u>, 71 Conn. App. 190, 193 (2002).

judgment as to this claim because this was not information known
to them at the time they made their warrantless entry.  Rather,
this is information that was first obtained from Cruz when he was
deposed in connection with this lawsuit.

The defendants also appear to argue that their warrantless
entry was justified, or in the alternative, that they are
entitled to qualified immunity, based on Connecticut's family
violence act, Conn. Gen. Stat. §§ 46b-38a to -38f.  However, a
"family violence crime" is defined in Connecticut General
Statutes § 46b-38a as a crime which requires that, in addition to
its other elements, the crime contain "as an element thereof an
act of family violence to a family member."  Conn. Gen. Stat. §
46b-38a(3)(1998).  "Family violence" is defined as follows:

> "Family violence" means an incident resulting
> in physical harm, bodily injury or assault, or
> an act of threatened violence that constitutes
> fear of imminent physical harm, bodily injury
> or  assault  between  family  or  household
> members.  Verbal abuse or argument shall not
> constitute  family  violence  unless  there  is
> present  danger  and  the  likelihood  that
> physical violence will occur.

Conn. Gen. Stat. § 46b-38a(1)(1998).  Thus, verbal abuse or
argument constitutes "family violence" only under certain,
limited circumstances.

In addition, the defendants contend that <u>Tierney</u> supports
their position because the first officer on the scene in <u>Tierney</u>
found the residence silent and entered without knocking or
identifying himself.  However, <u>Tierney</u> does not support the

defendants' position.  First, in <u>Tierney</u>, the defendants argued
on appeal that "even according to plaintiffs' version of the
facts, they are entitled to summary judgment," <u>id.</u> at 194,
whereas here the defendants have disregarded the plaintiffs'
evidence.  In addition, in <u>Tierney</u>, the court noted the following
with respect to the situation that confronted the officer upon
his arrival:

> He was responding to what he was told was a
> "bad" domestic disturbance, the worst yet at
> this  location  according  to  experienced
> observers; when he arrived at the scene, he
> was informed by neighbors that the shouting
> had ended right before his arrival; and as he
> approached the house, Davidson heard nothing
> and found a broken window pane.

<u>Id.</u> at 197.  While the situation in <u>Tierney</u> is comparable to the
defendants' version of events here, it is not all comparable to
the plaintiffs' version of events.

The moving party on a motion for summary judgment has an
initial burden of showing that there are no genuine issues of
material fact and, based on the undisputed facts, he is entitled
to judgment as a matter of law.  <u>See</u> <u>Weinstock v. Columbia Univ.</u>,
224 F.3d 33, 41 (2d Cir. 2000)("the moving party bears the
initial burden of establishing that there are no genuine issues
of material fact"); <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>,
373 F.3d 241, 244 (2d Cir. 2004)("If the evidence submitted in
support of the summary judgment motion does not meet the movant's
burden of production, then summary judgment must be denied even

if no opposing evidentiary matter is presented.")(internal quotation marks and citation omitted).

Here, the evidence from the parties is diametrically opposed in terms of whether this was an incident that could fall within the definition of "family violence" and/or whether exigent circumstances existed for some other reason. Because genuine issues of material fact exist as to this point, the defendants have not met their burden of showing that they are entitled to summary judgment, even on the grounds of qualified immunity.

Accordingly, the defendants' motion for summary judgment as to this claim is being denied.

### D.    Fourth and Fifth Causes of Action: State Law Claims Based Upon the Same Theory as Federal Claims

The defendants argue that if the court grants summary judgment as to the plaintiff's federal claims, it should decline to exercise jurisdiction over the plaintiff's common law claims and claims pursuant to the Connecticut Constitution based on the same theory. As numerous of the plaintiff's federal claims remain, the court does not find this argument persuasive.

The defendants also argue in this section of their memorandum that they are immune from liability pursuant to Connecticut General Statutes § 46b-38b(c) which provides:

> No peace officer shall be held liable in any civil action regarding personal injury or injury to property brought by any party to a family violence incident for an arrest based on probable cause.

21

Conn. Gen. Stat. § 46b-38b(c)(1998).  However, as discussed above, genuine issues of material fact exist as to whether this incident falls within the definition of a "family violence" incident.

### E. First Cause of Action: § 1983 Claims Against Defendant Manning for Unlawful Arrest and Detention and Malicious Prosecution

Defendant Manning moves for summary judgment as to the § 1983 claims by both plaintiffs for unlawful arrest and detention and malicious prosecution.  The only evidence in the record on this point is that (1) when Manning arrived at the apartment, Ocasio was pulling Cruz out of the apartment and Manning assisted Ocasio in securing the handcuffs on Cruz and (2) Manning took Pianka into custody when he was instructed by Ocasio to do so on the grounds that Pianka had interfered with an officer.  Under these circumstances, the court concludes that Manning is, at a minimum, entitled to summary judgment on the grounds of qualified immunity as to both plaintiffs' claims in their First Cause of Action for unlawful arrest and detention and malicious prosecution, because it was objectively reasonable for Manning to believe that these actions did not violate the plaintiffs' rights.

In response to the portion of the defendants' initial memorandum addressing this point, the plaintiffs discuss their failure to intervene claims against defendant Manning.  The court

22

notes, however, that those claims are not put in issue in the motion for summary judgment.

**IV.  <u>CONCLUSION</u>**

For the reasons set forth above, the defendants' Motion for Summary Judgment (Doc. No. 26) is hereby GRANTED in part and DENIED in part.

Summary judgment shall enter in favor of defendant Manning only with respect to the plaintiffs' First Cause of Action as to the § 1983 First Amendment retaliation claim and the § 1983 claims for unlawful arrest and detention and malicious prosecution.

It is so ordered.

Dated this 26th day of May, 2005, at Hartford, Connecticut.

/s/AWT

_____
Alvin W. Thompson
United States District Judge