UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY PIANKA; | : | |
| PEDRO CRUZ; | : | |
| Plaintiffs | : | CIVIL ACTION NO. |
| | : | 3:01 CV 153 (AWT) |
| VS. | : | |
| | : | |
| CHRISTOPHER MANNING; | : | |
| CARLOS OCASIO; | : | |
| FELIX ORTIZ; | : | |
| Defendants | : | SEPTEMBER 7, 2006 |

## JOINT TRIAL MEMORANDUM

Pursuant to the court's pretrial order, the parties hereby offer the following pretrial

memorandum:

1.    **TRIAL COUNSEL:**

    For the Plaintiffs:

    Jon L. Schoenhom, Esq.
    Jon L. Schoenhom & Associates, LLC
    108 Oak Street
    Hartford, Connecticut 06106-1515
    Tel. (860) 278-3500

    For the Defendants:

    James J. Szerejko, Esq.
    Halloran & Sage, LLP
    One Goodwin Square
    Hartford, CT 06103
    Tel. (860) 522-6103

2.    **JURISDICTION:**

    The jurisdiction of the court is invoked under the provisions of Sections 1331,

1342 and 1367 of Title 28, and Sections 1983, 1984 and 1988 of Title 42 of the United

States Code.

**3.    JURY/NON-JURY:**

The plaintiffs have claimed a trial by jury of all issues raised in their complaint.

**4.    NATURE OF CASE:**

This is a civil rights action brought pursuant to 42 U.S.C. §§1983 and 1988, Article 1, Sections 4, 5, 7 & 9 of the Connecticut Constitution and the First, Fourth and Fourteenth Amendments to the U.S. Constitution for alleged violations of civil rights by a Hartford Police Officers.  The defendants, all Hartford police officers, responded to an anonymous complaint of a domestic disturbance at 140 New Britain Avenue, in Hartford, Connecticut.  The defendants, Ocasio and Ortiz, entered the apartment of plaintiff Cruz, without permission and without a warrant, when said apartment was quiet and dark. The defendants claim the door was open.  Plaintiff Cruz emerged from a rear bedroom and instructed the defendants Ocasio and Ortiz to leave his apartment.  A scuffle ensued inside the apartment where plaintiff Cruz was beaten repeatedly with clubs, suffering numerous injuries, including a broken arm and gashes to the head. Plaintiff Pianka, the building manager, witnessed a portion of the incident and after asking another tenant to call the state police, yelled to the officers to stop beating Plaintiff Cruz.  Plaintiff Pianka was subsequently chased by defendants Ocasio and Ortiz and struck on the head with a nightstick by defendant Manning, requiring multiple stitches.  Manning witnessed the assault on, and resultant injuries to, Mr. Cruz and did nothing to put a stop to Ocasio and Ortiz's alleged acts.  The plaintiffs were both arrested by the defendants and charged with several crimes.  At a subsequent, joint trial on the criminal charges, Plaintiff Pianka was found not guilty of all charges. Plaintiff Cruz was convicted of one count of assault on a police officer for an alleged assault on

Defendant Ortiz, and acquitted of the remaining charges. Subsequently, this action was filed charging violations of the plaintiffs' constitutional rights and state tort claims.

## 5.    STIPULATIONS OF FACT AND LAW:

a.    Stipulations of Fact:

1.    The Defendants, Christopher Manning (hereinafter "Defendant Manning"), Carlos Ocasio (hereinafter "Defendant Ocasio") and Felix Ortiz (hereinafter "Defendant Ortiz"), were at all relevant times, employed as police officers for the city of Hartford.

2.    At all times relevant to this lawsuit, the Defendants were acting under color of state law as police officers for the City of Hartford.

3.    On the evening of February 7, 1998, the Defendants Ocasio and Ortiz were dispatched to Plaintiff Cruz's residence at 140 New Britain Avenue, Hartford, Connecticut, on a complaint of a domestic dispute. Defendant Manning joined Defendants Ocasio and Ortiz shortly thereafter.

4.    The Defendants were not in possession of either search or arrest warrants at the time of their entry into Plaintiff Cruz's apartment on said date.

5.    Plaintiff Pianka was charged *inter alia* with interfering with police by the defendants in violation of C.G.S. § 53a-167a. After a trial in January of 2000, he was acquitted of that charge.

6.    Plaintiff Cruz was charged with 8 offenses and was convicted after a jury trial in January 2000 of one count of assault on a police officer.

b.     Stipulations of Law:

Defendants were acting under color of law as police officers at all times relevant
to the complaint.


**6.     PLAINTIFFS' CONTENTIONS:**

The Plaintiffs claim that on or about February 7, 1998, the defendants, acting as

Hartford police officers, responded to an anonymous complaint of a domestic argument

on the second floor of 140 New Britain Avenue, a multi-family apartment building in

Hartford. Defendants Ocasio and Ortiz entered the building and climbed the stairs to

the second floor where they proceeded, with night sticks drawn, to enter the quiet and

dark apartment of plaintiff Cruz. Cruz emerged from a bedroom at the back of the

apartment and observed the silhouettes of two unidentified figures in his living room. As

Plaintiff Cruz walked towards the defendants he was able to discern that they were

uniformed police officers. Plaintiff Cruz then asked them if they had a warrant to enter

his dwelling. When one of the defendants conceded they had no warrant, he pointed

them towards the hallway and told them to talk with hum in the hallway.

Defendant Ocasio struck Mr. Cruz in the mouth with his night stick, causing

Cruz's teeth to cut completely through his lower lip. Plaintiff Cruz staggered backwards

and was attacked by defendants Ortiz and Ocasio, who beat him about the head, torso,

arms and legs, each striking him more than a dozen times with their batons and

punching and kicking him as he lay bleeding on the floor. Once the defendants Ortiz

and Ocasio were largely finished beating Plaintiff Cruz, they sprayed his entire head

and torso with pepper spray, despite the fact that Mr. Cruz's infant child who suffered

from asthma was present in the enclosed apartment. During this beating, the

4

defendants fractured the plaintiff's arm, bruised his ribs, caused internal injuries, gaping head wounds, and abrasions and lacerations over much of his body, which required emergency medical intervention and hospitalization.

While defendants Ocasio and Ortiz were beating Plaintiff Cruz, Plaintiff Pianka, the apartment building manager, stepped into the open doorway of the apartment and suggested in a non-authoritative tone that the beating cease. Upon hearing Plaintiff Pianka's suggestion, Defendant Ocasio swore at him. Plaintiff Pianka renewed his request that the officers cease the beating of Mr. Cruz. At this point Defendant Ocasio turned and chased Plaintiff Pianka from the apartment. Plaintiff Pianka ran to the first floor of his building and asked another tenant to call the state police, fearing that Ocasio and Ortiz were going to beat Plaintiff Cruz to death.

When Defendants Ocasio and Ortiz were nearly finished brutalizing Plaintiff Cruz, they dragged him along the hardwood floor by his feet to the hallway where they rammed his head against the wall, causing additional hemorrhaging and splattering his blood along the hallway wall and floor. Despite the severity of the Plaintiff's injuries, the defendants failed to provide him medical attention and left him to bleed on the floor until other officers called for an ambulance.

In an effort to conceal their criminal and unconstitutional behavior, the defendants conspired to arrest Plaintiff Pianka. Ocasio and Ortiz told Defendant Manning to arrest Plaintiff Pianka. Defendant Manning approached Plaintiff Pianka, ordered him to face the wall and then struck him in the head from behind, causing a large bleeding laceration to the top of the skull which required stitches. Plaintiff Pianka collapsed to the ground under the force of this blow and was handcuffed and transported in a police cruiser to processing. It was only when blood was observed in

the back of the defendants' patrol car that Plaintiff Pianka was thereafter transported to

the hospital for medical treatment. Defendants Manning, Ocasio and Ortiz thereafter

met and conspired to prepare false incident reports, internal affairs statements and "use

of force" reports, so that the plaintiffs would be prosecuted on false charges, and to

cover up their use of brutal and excessive force perpetrated upon the plaintiffs.

Thereafter, the defendants charged Plaintiff Cruz with the following criminal

offenses: two counts of threatening (Conn. Gen. Stat. § 53a-62); two counts of assault

on a police officer (Conn. Gen. Stat.§ 53a-167c); two counts of conspiracy to commit

assault on a peace officer (Conn. Gen. Stat.§§ 53a-48; 53a-167c); risk of injury to a

minor (Conn. Gen. Stat. § 53-21); and disorderly conduct (Conn. Gen. Stat. § 53a-182).

Plaintiff Pianka was charged with the following criminal offenses: interfering with an

officer (Conn. Gen. Stat. § 53a-167a); assault on a police officer (Conn. Gen. Stat. §§

53a-49; 53a-167c); and conspiracy to commit assault on a peace officer (Conn. Gen.

Stat. §§ 53a-48; 53a-167c); and reckless endangerment (Conn. Gen. Stat. § 53a-64).

Because of the nature and extent of the false charges against Plaintiff Cruz, he

was taken in restraints from the hospital despite his broken arm and other severe

injuries and remained in a jail cell in severe pain on a high bond until the following

Monday, February 9, 1998, when he was released in court by a judge on his written

promise to appear.

Defendants Manning, Ocasio and Ortiz knew that the above-cited charges were

baseless and lacking in probable cause, and prepared deliberately false incident reports

in order to conceal their illegal and unlawful entry, and the brutal, vicious and unlawful

attack visited upon the plaintiffs.

The plaintiffs went to trial on January 18, 2000, in the Hartford Superior Court after the prosecutor dropped several charges. The defendants further agreed and conspired to commit perjury in order to seek the convictions of the plaintiffs. Plaintiff Pianka was acquitted of all charges on February 1, 2000. Plaintiff Cruz was acquitted of all charges except for one count of assault on a peace officer. Thus, all criminal charges (with the exception of the aforementioned count against Plaintiff Cruz) terminated in the plaintiffs' favor. Subsequently, this action was filed charging violations of the plaintiffs' constitutional rights, and state torts. Plaintiff Pianka also pursued a complaint against the defendants with the Hartford Police Department. The Plaintiffs seek damages pursuant to 42 U&C. §§198.3 and 1988 and pursuant to Connecticut common and Constitutional law.

## 7.    DEFENDANTS' CONTENTIONS:

The defendants. Carlos Ocasio and Felix Ortiz, uniformed Hartford police officers, claim that on or about February 7, 1998, they were dispatched to the premises located at 140 New Britain Avenue in Hartford in response to a call of a domestic dispute in progress. Upon arrival, they found a multi-family apartment building and a woman, later identified as Glorimel Rosa, running out of Apartment 2E making comments that "he was crazy and was going to kill me." The officers attempted to calm down Ms. Rosa, who was crying and yelling about the conduct of one Pedro Cruz, Ms. Rosa's live-in boyfriend, and the father of their 5-month-old son. As the officers attempted to find out who was in the apartment she had left behind, she took off running and did not advise them. The officers found the door to the apartment open and entered in an effort to further their investigation and secure the safety of the occupants. They were immediately approached by the plaintiff, Pedro Cruz, who began swearing at

7

the officers and asking them what they were doing in his apartment without a warrant.
Mr. Cruz adopted a belligerent posture in close distance to the officers, and Officer
Ocasio instructed him to calm down and step back. Mr. Cruz then became louder and
more vulgar and, without warning, struck Officer Ocasio on his right cheek. This blow to
Officer Ocasio shocked him and caused him to move backward. Mr. Cruz continued
swinging his fist and Officer Ocasio pushed him back while grabbing his police baton.
In an effort to gain control, Officer Ocasio struck Mr. Cruz in the hands and arms several
times, which had no effect upon him. Officer Ortiz then struck Mr. Cruz in the legs and
arms with no effect. Mr. Cruz then turned his attention toward Officer Ortiz, and Officer
Ocasio then dispensed his OC spray, which had no disabling effect upon Mr. Cruz, but
only caused him to become more angry. Mr. Cruz then began swinging his fist and
struck Officer Ocasio in the shoulder. Officer Ocasio then attempted to strike Mr. Cruz
in the shoulder area with his police baton, as the accused dropped to his knees, causing
him to be struck in the forehead area. Both officers were now in the process of gaining
control over Mr. Cruz. At that point, the plaintiff, Jeffrey Pianka, entered into the
apartment and began yelling. Both officers instructed Pianka to leave the apartment
and not to interfere. As Officer Ortiz attempted to grab Mr. Pianka, Pianka took a swing
at Officer Ortiz and then fled. Both officers remained with Mr. Cruz, who now managed
to begin kicking Officer Ocasio. Cruz then got to his feet and struck Officer Ortiz in the
nose, causing it to bleed. Mr. Cruz then grabbed Officer Ocasio's baton and Officer
Ocasio charged Mr. Cruz, who now fell to the floor. In doing so, Mr. Cruz hit his head
on the metal stairs or ladder to a bunk bed, as the struggle now was in a bedroom area.
Mr. Cruz refused commands to put his arms behind his back so that he could be
handcuffed and continued his struggle, kicking at the officers and attempting to stand

up, as they made efforts to hold him down. Mr. Cruz again struck Officer Ortiz, but Officer Ortiz then knocked Mr. Cruz down, causing him to hit his head again. While Mr. Cruz was on the floor, Officer Ocasio, once again, used his OC spray and gained control of him so that a handcuff was placed on Mr. Cruz's right hand. When Officer Ortiz went to place his left hand behind Cruz to complete the handcuffing process, once again, Mr. Pianka came into the apartment and grabbed Officer Ortiz pulling him off Mr. Cruz. Mr. Pianka then fled the apartment again, and Mr. Cruz began swinging with his left hand. Officer Ocasio then struck Mr. Cruz in the left arm-hand area. Efforts were made, once again, to handcuff Mr. Cruz when Mr. Pianka intervened again. Mr. Cruz then managed to slip away and attempted to stand up and continued to kick at the officers. Officer Ocasio heard another assisting officer arrive (Officer Manning), and then dragged Mr. Cruz to the hallway, as the officers were overcome with the fumes from the OC spray. Once in the hallway with the assistance of other officers, Mr. Cruz was handcuffed.

Mr. Pianka was present in the hallway and Officer Ocasio instructed Officer Manning to place him under arrest, as he had been interfering with the officers. Mr. Pianka attempted to leave, and when grabbed by officers, he resisted arrest and would not comply with the officers' requests to place his hands behind his back. The accused Pianka was struck by Officer Manning with his baton, as the accused would not comply. As Officer Manning placed one handcuff on Mr. Pianka, he made a fist as to threaten Officer Manning. Officer Manning was using his baton and was wrestling with Pianka and swinging his baton. Officer Manning then struck the accused Pianka, as he was attempting to strike his shoulder area in order to get his un-handcuffed hand behind his back. As Pianka moved, he was struck in the head. Ultimately, Mr. Pianka was taken

9

to Hartford Hospital, was treated and released from the hospital, and charges were filed against him. An ambulance was requested for Mr. Cruz for the injuries he sustained during the subject incident. A 5-month-old child was located within the apartment, and it appeared that he was having difficulties breathing because of the OC spray. An ambulance was summoned to bring the child to Connecticut Children's Medical Center. Afterwards, the victim, Glorimel Rosa, gave an account that Mr. Cruz had pushed her and slapped her in the face, and she suffered a puncture wound to her right hand.

At the hospital, Mr. Cruz threatened the officers and Officer Ortiz was treated for the injuries he sustained to his nose and then released.

**8.    LEGAL ISSUES:**

      a.    Whether the defendants illegally entered plaintiff Cruz's home.

      b.    Whether the defendants reasonably relied upon any exception to the warrant requirement of the U.S. Constitution.

      c.    Whether the defendants reasonably relied upon any exception to the warrant requirement of the Connecticut Constitution.

      d.    Whether the plaintiffs suffered compensable damages as a result of the actions by the defendants.

      e.    Whether any defendant used excessive and unreasonable force on either plaintiff.

      f.    Whether the defendants violated the First Amendment of the United States Constitution by using force against plaintiff Pedro Cruz when he asked if they had a warrant and when they failed to produce one, he requested they leave his apartment.

g.    Whether the defendants violated the First Amendment of the United States Constitution by using force and arresting plaintiff Jeffrey Pianka when he requested that the force used against the plaintiff Cruz cease.

h.    Whether the defendants violated the Fourth Amendment of the United States Constitution by arresting and prosecuting Plaintiff Pianka,

i.    Whether the defendants violated the Fourth Amendment of the United States Constitution by arresting and prosecuting Plaintiff Cruz on numerous charges.

j.    Whether the defendants violated Connecticut Constitution, Article I, § 4 by using force against plaintiff Pedro Cruz once he requested they leave his apartment.

k.    Whether the defendants violated Connecticut Constitution, Article I, § 4 by using force against plaintiff Jeffrey Pianka once he requested the use of force against plaintiff Cruz cease.

l.    Whether the defendants violated Connecticut Constitution, Article I, § 5 by using force against plaintiff Pedro Cruz when he asked to see a warrant, and when they conceded that they did not have one, he requested the defendants leave his apartment.

m.    Whether the defendants violated Connecticut Constitution, Article I, § 5 by using force against plaintiff Jeffrey Pianka when he requested the use of force against plaintiff Cruz cease.

n.    Whether the defendants violated Connecticut Constitution, Article I, § 7 by entering and subsequently remaining in the apartment of plaintiff Pedro Cruz.

o.    Whether the defendants violated Connecticut Constitution, Article I, § 9 by arresting and imprisoning plaintiff Pedro Cruz.

p.    Whether the defendants violated Connecticut Constitution, Article I, § 9 by arresting and imprisoning plaintiff Jeffrey Pianka.

q.    Whether the defendants are entitled to qualified immunity for any or all of their actions.

r.    Whether the defendants intentionally inflicted extreme emotional distress on the plaintiffs.

s.    Whether the defendants trespassed on or otherwise interfered with the plaintiffs' protected property interests.

t.    whether the defendants are entitled to governmental immunity as to any and all of plaintiffs' state law claims.


## 9.    VOIR DIRE QUESTIONS:

See the list of proposed voir dire questions attached to the Joint Trial Memorandum at Tabs A & S.


## 10.    LIST OF WITNESSES:

For the Plaintiff:

a.    **Jeffrey Pianka** is a Plaintiff in this matter, and will testify about the facts contained in the Plaintiffs' Complaint and the damages suffered as outlined in the Complaint.


b.    **Pedro Cruz** is a Plaintiff in thus matter, and will testify to the facts contained in the Plaintiffs' Complaint and damages suffered as outlined in the Complaint.

c.    **Attorney Kathleen Eldergill**, Manchester, will testify concerning the

reasonableness of the amount and rate of attorney's fees (unless said sum or rate is

subject to stipulation),

**OBJECTION:**        **(Not to be disclosed to the jury panel as a trial witness, but
                     acknowledge that if there is a verdict favorable to the plaintiffs,
                     her testimony would be offered in an appropriate post-trial
                     hearing before the Court.)**

d.    **Glorimel Rosa**, Pedro Cruz's companion and mother of his child, is a

witness in this matter and will testify to her interaction with Pedro Cruz prior to the

arrival of the police as well as her observations of the police as they climbed the stairs

in the apartment building.


e.    **Jose Lunes**, a neighbor of Pedro Cruz, is a witness in this matter and will

testify to the conduct of the police that he witnessed and that he heard Plaintiff Pianka

ask him to call the state police.

**OBJECTION:**        **Not disclosed as a witness during the discovery process, in
                     response to Interrogatories and Production Requests, directed
                     to the plaintiffs; relevance and materiality.**

f.    **Kennie Azuarga**, of Wethersfield Avenue, Hartford, Connecticut, will

testify that she spent the evening with Glorimel Rosa and Marcello Cruz, that Plaintiff

Cruz came to pick them up and that they were not arguing at the time. She will testify

about her interaction with Plaintiff Cruz and Ms. Rosa on that evening, and that Ms.

Rosa requested that she accompany her back to her apartment on New Britain Avenue.

She will also testify regarding her observations of the police, the ambulance personnel,

the blood and gauze, and tho the continuing presence of pepper spray in the apartment,

and the exchange between a police officer and Ms. Rosa.

**OBJECTION:**    **Not disclosed as a witness during the discovery process, in response to Interrogatories and Production Requests, directed to the plaintiffs; relevance and materiality.**

g.    **Tony Flores**, 160 New Britain Avenue, Hartford, is a witness in this matter and will testify to his observation of the arrival of the Defendants Ortiz, Ocasio and Manning at 140 New Britain Avenue, and to the transport of Marcello Cruz and Plaintiff Cruz by the paramedics.

**OBJECTION:**    **Not disclosed as a witness during the discovery process, in response to Interrogatories and Production Requests, directed to the plaintiffs; relevance and materiality.**

h.    **Luciano Rosado-Ortiz**, 142 New Britain Avenue, Hartford, Connecticut will testify to his observations of Pianka opening the door for police officers who had arrived at 142 New Britain Avenue, and to Pianka's interactions with the police, as well his observation of Pianka's injuries following the incident.

**OBJECTION:**    **Not disclosed as a witness during the discovery process, in response to Interrogatories and Production Requests, directed to the plaintiffs; relevance and materiality.**

i.    **Linda Pianka**, of West Hartford, Connecticut, Jeffrey Pianka's sister and a nurse employed at Hartford Hospital, will testify to her brother's injuries, to the fact that she removed his sutures and to the contents of photographs she took of the wounds of both plaintiffs as well as the contents of photographs she took of the blood splatter in the hallway and in Pedro Cruz's apartment.

**OBJECTION:**    **Not disclosed as a witness during the discovery process, in response to Interrogatories and Production Requests, directed to the plaintiffs; relevance and materiality.  Further, not disclosed as an expert witness pursuant to F.R.C.P. 26(a)(2).**

j.    **Brian Sawyer**, 144 New Britain Avenue, Hartford, is a witness in this matter and will testify to the police conduct he witnessed on February 7, 1998.

**OBJECTION:**    **Not disclosed as a witness during the discovery process, in response to Interrogatories and Production Requests, directed to the plaintiffs; relevance and materiality.**

    k.    **Teresa Allen, MD**, an attending physician at St. Francis Hospital or

hospital records keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness pursuant to F.R.C.P. 26(a)(2) or the scheduling order; relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

    l.    **Bernd Woerner, MD**, an attending physician at St. Francis Hospital or

hospital records keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

    m.    **S. Kennedy**, a trauma nurse at Hartford Hospital or hospital records

keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

    n.    **J. Gawronski**, a trauma nurse at Hartford Hospital or hospital records

keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

    o.    **Sally Scirpo, RN**, a nurse recorder at Hartford Hospital or hospital

records keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

p.    **Bill Ping Pang, MD**, a physician on the Trauma Team at Hartford Hospital

or hospital records keeper, will testify to the medical treatment administered to Pedro

Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

q.    **Kurt James**, a physician at Hartford Hospital or hospital records keeper,

will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

r.    **M. Azzocca**, a physician at Hartford Hospital or hospital records keeper,

will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

s.    **S. Alexander**, Emergency Medicine at Hartford Hospital or hospital

records keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

t.    **An authorized records keeper in the medical records department at**

**Hartford Hospital** will testify regarding authentication of medical records.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

u.    **M. Defiles**, a physician at the Connecticut Children's Medical Center or

hospital records keeper, will testify to the medical treatment administered to Marcello

Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay. F.R. Evid. 801, 802, 401, 402 and 403.**

v.    **A records custodian in the health information department of the Connecticut Children's Medical Center** will testify regarding authentication of medical records of Marcello Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay. F.R. Evid. 801, 802, 401, 402 and 403.**

w.    **The records keeper for American Medical Response**, the ambulance company summoned to the scene to transport Pedro Cruz for medical treatment, will testify regarding authentication of the ambulance records.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay. F.R. Evid. 801, 802, 401, 402 and 403.**

x.    **William Sanders**, a physician at St. Francis Hospital or hospital records keeper, will testify to the medical treatment administered to Pedro Cruz.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay. F.R. Evid. 801, 802, 401, 402 and 403.**

y.    **The records keeper for St. Francis Hospital**, where Pedro Cruz received follow up medical care following the assault will testify regarding authentication of the medical records.

**OBJECTION:**    **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay. F.R. Evid. 801, 802, 401, 402 and 403.**

z.    **The records keeper for Hospital Radiologists**, which performed x-rays of the plaintiff Pedro Cruz will testify regarding authentication of the medical records.

**OBJECTION:**     **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

aa.    **Diane Chacer, RN**, a nurse at the Rapid Assessment unit at Hartford

Hospital's emergency department or hospital records keeper, will testify to the medical

care administered to Jeffrey Pianka.

**OBJECTION:**     **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

bb.    Sergeant Henry Martin, Hartford Police, or current records keeper, will

testify to the process for filing and investigating internal affairs complaints and

authenticate any internal affairs records and statements filed regarding Jeffrey Pianka

and Pedro Cruz.

**OBJECTION:**     **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

cc.    **Officer Pedro Rivera**, Hartford Police, was a responding police officer

who will testify to his observations on arrival at the scene,

dd.    **Officer Dennis O'Connor**, Hartford Police, was a responding police

officer who will testify to his observations on arrival at the scene and to his summoning

an ambulance for Pedro Cruz.

ee.    **Sergeant P. Jobes**, Hartford Police, was a responding officer, is a witness

in this matter and will testify to his observations on arrival at the scene.

ff.    **Officer James Buyak**, Hartford Police, was a responding officer and will

testify to his observations on arrival at the scene.

gg.    **Officer Nathaniel Ortiz**, Hartford Police, was a responding officer and will

testify to his observations on arrival at the scene.

     hh.    **Officer David Dufault**, Hartford Police, was a responding officer and will

testify to his observations on arrival at the scene.

     ii.    **Records keeper for the Hartford Police Department**, Internal Affairs

Department.

**OBJECTION:**     **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

     jj.    **Records keeper for the Department of Justice**, Federal Bureau of Information, Washington, D.C., regarding the employment application of Officer Christopher Manning,

**OBJECTION:**     **Hearsay.  Lack of relevance; immaterial; prejudicial effect and/or potential for confusion substantially outweighs probative effect.  F.R. Evid. 801, 802, 401, 402 and 403.**

     kk.    **Attorney William O'Grady**, or authorized staff member, will testify

regarding his representation of Plaintiff Pianka in the criminal case, the cost of

representation and drafting of the internal affairs complaint.

**OBJECTION:**     **Not disclosed as an expert witness in accordance with the Federal Rules of Civil Procedure 26(a)(2); relevance, materiality and hearsay.  F.R. Evid. 801, 802, 401, 402 and 403.**

     ll.    **Elvin Garcia and Cindy Bowman**, 250 Hamilton Street, Hartford,

Department of Children and Families case workers, will testify about interviews with

Officers Ortiz and Ocasio on or about February 11, 1998 regarding the subject incident.

**OBJECTION:**     **Hearsay.  Lack of relevance; immaterial; prejudicial effect and/or potential for confusion substantially outweighs probative effect.  F.R. Evid. 801, 802, 401, 402 and 403.**

     Plaintiff reserves the right to call any witness listed by the Defendants.