## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY PIANKA and PEDRO CRUZ, | : | |
| *Plaintiffs* | : | CIVIL ACTION NO. |
| | : | 3:01 CV 153 (AWT) |
| VS. | : | |
| | : | |
| CHRISTOPHER MANNING; | : | |
| CARLOS OCASIO and FELIX ORTIZ; | : | |
| *Defendants* | : | SEPTEMBER 7, 2006 |

### PLAINTIFF'S PROPOSED JURY CHARGES

1. <u>Section 1983 Actions.</u> The Congress of the United States has adopted a number of civil rights statutes under the fourteenth amendment to the Constitution of the United States to prevent the state from depriving any person of life, liberty, or property, without due process or the equal protection of the laws. One of these civil rights acts provides that individuals may seek redress in this Court, by way of monetary damages, against any person or persons who, under color of state law, deprive that individual of any of his constitutional rights.

"Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as, in this case, a police officer. Acts are done under color of law when police act within the limits of their lawful authority. But acts are also done under color of law when police act outside the limits of their lawful authority while pretending to act in the performance of their official duties; that is to say, it is an unlawful act for a police officer to abuse or misuse the power he or she has been given as an official. And it is an unlawful act under color of law if the act could only have been done by an official exercising his or her powers outside the bounds of his or her lawful authority. Here, there is no dispute that at the time of and in the course of the incidents alleged in the complaint that

1

the defendants were police officers for the City of Hartford. In that case each defendant was acting under color of state law.

To establish a claim under Section 1983, the plaintiff must establish, by a preponderance of the evidence, each of the following elements:

First that the defendants acted under color of the authority of their respective municipality; second that one or more of the defendants deprived the plaintiffs of any constitutional rights, privileges, or immunities secured by the Constitution or laws of the United States; third, that the defendants' acts were the proximate cause of the injuries and consequent damages sustained by the plaintiffs; fourth, that the actions of the defendants which caused the alleged loss were intentional.

The issue for you to determine is whether the defendants acted outside of the bounds of their lawful authority. It is the nature of the actions performed which determines when an officer has acted under color of law.

Authority:    42 U.S.C. §1983; *Monroe v. Pape*, 365 U.S. 167 (1961); *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Stengel v. Belcher*, 552 F.2d. 438 (6th Cir. 1975); *Velez v. Levy*, 401 F.3d 75 (2005).

2. <u>First Amendment Right to Protest Police Conduct</u>

The First Amendment protects speech, criticism or challenges directed at police officers, unless the speech is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." The constitutional right to free speech extends to nearly all speech by an individual directed towards a police officer, even where those words are angry, crude or offensive, or contain expletives and profanity. Even if the defendants were loud or uttered words which an average citizen might find offensive, this conduct would be protected by the constitutional right to freedom of speech, particularly when directed towards law enforcement. Insolence and vulgarity are not crimes, and enforcing better standards of social conduct is not the business of police officers, or the courts.

Every citizen has a right to criticize public officials, and police officers are public officials. Such criticism is protected even if it turned out that the plaintiffs were incorrect in their assertions. Police officers are expected to exercise a higher degree of restraint than the average citizen. Their training and experience should make them more thick-skinned than ordinary citizens.

In order to prove their First Amendment rights were violated, the plaintiffs must prove that they had "1) an interest protected by the First Amendment, 2) the defendants' actions were motivated by or substantially caused by the plaintiffs' exercise of that right, and, 3) the defendants' actions chilled the exercise of those rights." If the officers had another, legitimate, reason for their actions, then they did not violate the plaintiffs' First Amendment rights.

If you find that Pedro Cruz had a right to challenge the police officer's presence in his home, and that Defendants Ocasio and Ortiz assaulted Mr. Cruz because he questioned their right to be there, and that their actions stopped Mr. Cruz from further exercising his right to free speech, then you must find the defendants violated his first amendment rights.

If you find that Jeffrey Pianka had a right to challenge the police officer's assault on Mr.

3

Cruz, and that Defendant Ocasio chased Mr. Pianka because he questioned the officers' actions, and thereafter caused his arrest and/or struck him, and that the defendant's actions stopped Mr. Pianka from further exercising his right to free speech, then you must find the defendants violated his first amendment rights.

Authority: *City of Houston v. Hill*, 482 U.S. 451, 461 (2d Cir. 1987); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999); *State v. Beckenbach*, 1 Conn. App. 669, 679 (1984).

3.    False Arrest/ False Imprisonment

This is also an action for false arrest/false imprisonment, and as such its roots go very deep into the origins of English liberties. In our own constitution, in the bill of rights, we have this provision which dates back to the Magna Carta: "No person shall be arrested, detained, or punished except in cases clearly warranted by law."   I ask you to bear that cardinal principal in mind when you come to consider the various more detailed instructions I shall give you.

In view of this principle, no person whether officer or civilian, has a right to detain another except when he can clearly point to authority in law for so doing; otherwise, he may properly be held to respond in damages to the person he detains.

False arrest or imprisonment is the unlawful restraint by one person of the physical liberty of another.  Any period of restraint, however brief in duration, is sufficient to constitute a basis for liability.  To prevail on a claim of false imprisonment, the plaintiffs must prove that their physical liberty has been restrained by the defendants and that the restraint was against the plaintiffs' will; that is, that the plaintiffs did not consent to the restraint or acquiesce in it willingly.  A seizure by a police officer of an individual in his own home or on his property without a warrant is ground for an action for false imprisonment unless the arrest is authorized by statute.  False arrest is a type of false imprisonment.  In addition, all persons who participate in the false imprisonment may be jointly and severally liable for it.

In view of this principle, no man or woman, be he or she an officer or civilian, has a right to detain another except when he can clearly point to authority in law for so doing; otherwise, he may properly be held to respond in damages to the person detained.

Under Connecticut law, no arrest is lawful unless such police officer has probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the officer, and of which he had

5

reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect has committed a crime. The hunch, guess, conjecture or surmise of an officer is not enough, and there must be enough actual evidence to reasonably lead to the conclusion that the suspect has committed a crime.

If the seizure of the plaintiffs was unlawful, then those defendants involved are liable for false imprisonment.

Authority:    *Kent v. Katz*, 312 F.3d 568 (2d Cir. 2002); Berry *v. Loiseau*, 223 Conn. 786, 820 (1992); *State v. Guertin*, 190 Conn. 440 (1983); *McGann v. Allen*, 105 Conn. 177 (1926); *Zanks v. Fluckger*, 22 Conn.Supp. 311 (Super. 1961); Conn. Gen Stat. 54-1f; Connecticut Constitution, Article I, §9; *United States v. McDermott*, 918 F.2d 319 (2d Cir. 1990).

4.    Malicious Prosecution of Plaintiff Pianka

In order to prevail on a claim for malicious prosecution, Mr. Pianka must establish a violation of his rights under the Fourth Amendment and establish the elements of a malicious prosecution under Connecticut state law. If you determine that the defendants had probable cause to arrest the plaintiff, you must also find in favor of the defendants as to the plaintiff's malicious prosecution claim. If, however, you determine that the defendants did violate the plaintiff's right to be free from false arrest, then you must determine whether the plaintiffs have proven, by a preponderance of the evidence the following elements of a claim of malicious prosecution: 1) that the defendants initiated or procured the institution of criminal proceedings against the plaintiff; 2) that the criminal proceedings terminated in his favor; 3) that there was no probable cause for commencing the criminal proceedings; and 4) that the defendants acted with malice, primarily for a purpose other than that of bringing an offender to justice.

The parties agree that the defendants initiated criminal proceedings and that the proceedings terminated in favor of the plaintiff. The only issues, therefore, are whether there was probable cause to commence the criminal proceeding and whether the defendants acted with malice. I have already instructed you as to the question of probable cause to arrest Plaintiff Pianka. Malice is defined as a "wrong or improper motive, something other than a desire to see the ends of justice served." Malice may be inferred from a lack of probable cause.

Authority:    *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996);    *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991); *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003); *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982).

5.   <u>Malicious Prosecution of Plaintiff Cruz</u>

The instruction for malicious prosecution of Plaintiff Cruz is a little different than the one for Plaintiff Pianka.  As I just explained to you, in order to prevail on a claim of malicious prosecution, a plaintiff must prove that the criminal proceedings against him terminated in his favor. In this case, Mr. Cruz was convicted of one count of Assault on a Police Officer, and he was acquitted of Assault in the Third Degree and Interfering with a Police Officer.  Normally, an unfavorable termination of the proceedings would mean the plaintiff could not make a claim for malicious prosecution.

However, there are exceptions, when courts have held that an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event.  Where, as is the case here, the charged offenses are distinct, that is the elements of each offense is different and they are not lesser included offenses,  the plaintiff can still make a claim for malicious prosecution. This is to prevent police officers from adding unwarranted charges to valid violation charges.  Otherwise,  police officers could add unsupported serious charges to legitimate minor charges with impunity.

If you find that there was not probable cause to commence criminal proceedings against Mr. Cruz for any of the charges he was acquitted of that involve Ms. Rosa, Defendant Ocasio and/or Defendant Manning, you may find the defendants liable for malicious prosecution against Plaintiff Cruz. If you find there was probable cause to commence criminal proceedings, you must find against the plaintiff.

Authority: *Janetka v. Dabe*, 892 F.2d 187, 190 (1989).

6.    <u>Police Conduct Before The Alleged Assault on a Police Officer</u>

As I indicated before, there was one criminal charge that was not terminated in favor of Plaintiff Cruz. Mr. Cruz was found guilty after trial of on count of Assault on a Police Officer against Defendant Felix Ortiz only. If you find Plaintiff Cruz was under arrest or subject to force before the time he is alleged to have struck Defendant Ortiz, then the fact of his subsequent conviction is irrelevant to either false arrest and imprisonment or malicious prosecution, and you may find the defendants maliciously prosecuted, falsely arrested and imprisoned Mr. Cruz, in spite of this one conviction. If, however, you find that there was probable cause, the defendants acted without malice, or Plaintiff Cruz was under arrest or subject to force only after the time he is alleged to have struck Defendant Ortiz, then you must find for the defendants on these particular claims.

7.    Intentional Infliction of Emotional Distress

A plaintiff who is injured by the wrong-doing of another is just as much entitled to compensation for the mental suffering caused thereby as for any physical injuries he may have also sustained.

The plaintiffs claim that the acts on the part of the defendants were intentional. In addition, the plaintiffs also claim that the emotional distress which they alleges to have suffered was also intentionally inflicted. This means that the defendants either meant to cause the plaintiff mental suffering by their acts or that they knew or should have known that such suffering would follow from their conduct.

To sustain liability against the defendants under a claim of intentionally inflicting emotional distress on another person, four elements must be established. First, it must be shown that the defendant intended to inflict emotional distress or that he knew or should have known such distress was likely to result from such conduct. Secondly, the conduct has to be outrageous or extreme. Mere insults, indignities or annoyances that are not extreme or outrageous will not suffice. It is for you to decide, using ordinary knowledge acquired from everyday experience, whether or not the actions of the defendants, if proven, constitute outrageous or extreme conduct. If you do, the plaintiff's burden as to this element shall have been met.

A third element needed to prove liability for intentional infliction of emotional distress is causation, i.e., that the plaintiffs' mental suffering, if proven, was caused by the defendants' conduct. Finally, the plaintiffs must prove that their emotional distress was extreme.

Recovery for mental suffering does not depend upon any proof of physical injury or risk of physical harm. Although, the plaintiffs in this action allege physical injury, proof of such is not necessary and a plaintiff may recover damages for mental suffering even if such suffering is evidenced.

10

A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence, unfettered by any additionally exacting measure. If you find from the evidence introduced here, and by using your own experiences gathered daily in life, that these four elements have been proven by the plaintiffs, then you must find the defendants liable for damages for intentional infliction of emotional distress.

Authority: *Petyan v. Ellis*, 200 Conn. 243 (1986); *Carroll v. Allstate Ins*. Co., 262 Conn. 433, 443 (2003); *Buckley v. Lovallo* 2 Conn. App. 579 (1984); *Montinieri v. SNET Co.* 175 Conn. 337 (1978); *Murray v. Bridgeport Hospital*, 480 A2d 610 (Super C.) (1984); *Brown v. Ellis*, 484 A2d 944 (Super C.) (1984); Wright and Daly, Conn. Jury Instructions 3d Ed. {240 (1981).

8.   <u>Trespass</u>

A claim for trespass protects the right of the owner to exclusive possession of his property.  In order to prevail on the trespass action, the plaintiffs must show that (1) each had an ownership or possessory interest in property; (2) the defendants physically invaded, entered or intruded on the plaintiffs' property, affecting their exclusive right to possess; (3) the defendants entry was intentional; and (4) there was a direct injury to the plaintiffs' property.

Authority: *Abington Limited Partnership V. Talcott Mountain Science Center for Student Involvement Inc., et al* , 43 Conn. Supp. 424 (1994); *Bongiovanni v. Saxon*, Superior Court, judicial district of Tolland, Docket No. CV 02 0079540 > (June 4, 2003, Scholl, J.) (34 Conn. L. Rptr. 659); *Day v. Gabriele*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 03 0196802 (August 10, 2005, Tobin, J.).

9.    <u>Illegal Entry</u>

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions. Warrants are generally required to search a person's home or his person unless the exigencies (also called "emergencies") of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. They may not enter without a warrant merely to conduct an investigation or make an arrest.

If you find from the evidence, that at the time the defendants entered Mr. Cruz's apartment on February 7, 1998, that they did not have an objectively reasonable basis to believe that someone still inside the apartment was seriously injured or threatened with injury, then you should find in favor of Mr. Cruz on his fourth amendment illegal entry claim. On the other hand, if you find that the defendants did have such an objectively reasonable basis for that belief, then you should find for the defendants on this claim.

Authority: *Brigham City, Utah v. Stuart*, 126 S.Ct. 1943 (2006); *Groh v. Ramirez,* 540 U.S. 551, 559 (2004); *Payton v. New York,* 445 U.S. 573, 586 (1980).

10.    <u>Excessive Force</u>

Unusually rough handling or excessive force used by police during an arrest is a Fourth Amendment violation, even if the arrest itself is lawful. Whether actions by the police constitute "excessive force" is determined by actions that go beyond what is reasonable in a given situation. To determine whether the officers used excessive force against the plaintiffs, you must: 1) make an objective analysis of the officer's actions, including the need to make very quick decisions in a tense and shifting environment; 2) consider the severity of the crime at issue; 3) consider whether the plaintiffs posed an immediate threat to the safety of the officers or others; and 4) consider whether the plaintiffs were actively resisting arrest or attempting to evade arrest by flight. A conviction for assault or resisting arrest does not preclude an excessive force claim.

If you find that, given the circumstances, the defendants' physical actions against the plaintiffs went beyond what was reasonable in that situation, you must find they used excessive force.

Authority: *Sullivan v. Gagnier*, 225 F3d 161, 166 (2d Cir. 2000); *Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004); *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir. 1998); *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

11.    Intentional Tort

This matter includes claims for intentional torts. The plaintiffs allege in their complaint that the defendants intentionally, that is voluntarily, committed acts which resulted in the plaintiff suffering personal injuries and losses.

A person intentionally causes or attempts to cause injury if he acts or fails to act with the purpose of causing injury or with knowledge that injury is substantially certain to follow.

The burden is on the plaintiffs to prove to you by a fair preponderance of the evidence that the defendants intended to act as is alleged in the complaint and that the injuries to the plaintiffs were the direct and natural consequence of the intended acts.

Authority: *Alteiri v. Colasso* 168 Conn 329, 333 (1975); *Markey v. Santangelo* 195 Conn 76, 78 (1985); Prosser, The Law of Torts 4th Ed. { 8 (1971); Connecticut General Statutes { 38-332

12.    <u>Assault</u>

The plaintiffs in this case are claiming damages for injuries which they alleges were inflicted upon them intentionally by an assault and battery. I'll discuss battery in a moment.

An assault may be defined as an act intended to place another person in apprehension of imminent bodily harm. No actual contact is necessary at all to constitute assault. In this state an assault may be committed in three different ways: (1) willfully or voluntarily, and therefore intentionally; (2) under circumstances showing a reckless disregard of consequences of the act; or (3) negligently. It is simply an invasion of a person's right against being placed in a fearful state or any other purely mental disturbance of her personal integrity.

Here the plaintiffs claim that the defendants physically and violently struck them both, as well as chased Mr. Pianka. If you find that these actions placed the plaintiffs in apprehension of imminent physical harm, you must find in their favor on the issue of assault.

Authority: Prosser and Keaton, Prosser and Keaton On Torts 5th Ed. { 10 (1981); *Alteri v. Colasso* 168 Conn. 329, 333 (1975); *Manning v. Michael* 188 Conn 607, 617 (1982).

13.    <u>Battery</u>

The plaintiffs also seeks damages for physical injuries they claim they received from the defendants in the form of a battery.  A battery is an act designed to cause bodily injury to another person, which results in such an injury.  In an action for battery the act must cause physical injury, either directly or indirectly.

Therefore, if you find that the defendants made physical contact with the plaintiffs either with the intent to do so or merely with the intent to frighten or intimidate them in some way, either finding would constitute a battery and you must find in favor of the plaintiffs.

Authority:  Alteri v. Colasso, 168 Conn. 329, 334-5 (1975); Prosser and Keeton, Prosser and Keeton On Torts 5th Ed { 9 (1984)

17

14.    <u>Criminal Charges Brought by the Defendants Against the Plaintiffs</u>

As I indicated before, in order to find false arrest and imprisonment, and malicious prosecution, you must find the defendants did not have probable cause to arrest. Mr. Cruz was arrested and charged by the defendants for the following offenses: Threatening, Risk of Injury to a Minor, Disorderly Conduct, Third Degree Assault, Interfering with a Police Officer, Conspiracy to Commit Assault on a Police Officer, and Assault on a Police Officer. Mr. Pianka was arrested and charged by the defendants for the following offenses: Interfering With An Officer, Conspiracy to Commit Assault on a Police Officer, Assault on a Police Officer, and Reckless Endangerment. I will define these charges for you.

14a.    <u>Third Degree Assault</u>

Our statutes define assault in the third degree as follows: "A person is guilty of assault in the third degree when with intent to cause physical injury to another person, he causes such injury to such person or to a third person." In order for the defendants to have probable cause to believe that Mr. Cruz committed such a crime, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr. Cruz intended to cause physical injury to Glorimel Rosa, and 2) that Mr. Cruz did in fact cause physical injury to Ms. Rosa.

Physical injury is defined as impairment of physical condition, or pain.

Authority: Conn. Gen. Stat. 53a-61; Borden & Orland, Conn. Criminal Jury Instructions, Vol. 5.

14b.    <u>Interfering With An Officer</u>

A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer in the performance of the police officer's duties. Therefore, in order for the defendants to have probable cause to believe that the plaintiffs committed such a crime, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr. Cruz and Mr. Pianka obstructed, resisted, hindered or endangered the defendants; (2) that this conduct occurred while the defendants were in the performance of their duties as police officers; and (3) that Mr. Cruz

18

and Mr. Pianka intended to obstruct, resist, hinder or endanger the defendants while they were performing their duties. However, where there is an illegal entry by police officers into an individual's home, the individual has a privilege to resist that entry.

Authority:    General Statutes § 53-167a; *State v. Brosnan*, 221 Conn. 788 (1992).

### 14c.    Assault on a Police Officer

Assault on a police officer is defined in our statutes, in relevant part, as: "A person is guilty of assault of a peace officer ... when, with intent to prevent a reasonably identifiable peace officer ... from performing his duty, and while such peace officer ... is acting in the performance of his duties he causes physical injury to such peace officer."    Therefore, in order for the defendants to have probable cause to believe that Mr. Cruz committed such a crime against Defendant Ortiz, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr. Cruz intended to prevent Defendant Ortiz from performing his duty, 2) Mr. Cruz's actions occurred while Defendant Ortiz was performing his duty as an officer, 3) Mr. Cruz's actions caused physical injury to Defendant Ortiz.

Authority : Conn. Gen. Stat. § 53a-167c

### 14d.    Threatening

A person is guilty of threatening in the second degree when (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror.

Serious physical injury involves a substantial risk of death or causes serious disfigurement, impairment of health, or loss of the use of an organ.

In order for the defendants to have probable cause to believe that Mr. Cruz threatened the defendants, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr.

19

Cruz intended to place the defendants in fear of imminent serious physical injury with physical conduct, or 2) he threatened to commit a violent crime with the intention of terrorizing the defendants, or 3) he threatened to commit a violent crime with reckless disregard of the risk of injury to the defendants.

Authority: Conn. Gen. Stat. § 53a-62; *State v. Rossier*, 175 Conn. 204, 207 (1978).

14e.    Conspiracy to Commit Assault

The crime of conspiracy consists essentially of an agreement to perform criminal acts, followed by one or more overt acts in pursuance of that agreement. Our statutes state that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

In order for the defendants to have probable cause to believe that the plaintiffs conspired together to commit assault on a peace officer, there would have to be facts and circumstances at the time of arrest indicating that 1) the plaintiffs intended to assault the defendants; 2) there was an agreement between Mr. Cruz and Mr. Pianka to engage in or cause the assault of a peace officer; and 3) the commission, by Mr. Cruz and/or Mr. Pianka, of assault on a peace officer in pursuance of the agreement.

Authority: Conn. Gen. Stat. § § 53a-48; 53a-167c ; Borden & Orland, Conn. Criminal Jury Instructions, Vol. 5.

14f.    Risk of Injury to a Minor

Mr. Cruz was charged with Risk of Injury to a Minor – namely, his son. In order for the defendants to have probable cause to believe that the Mr. Cruz committed this crime, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr. Cruz's son was under sixteen years of age; 2) Mr. Cruz created, acquiesced in or was deliberately indifferent to a situation which was likely to be harmful to his son's health; and 3) Mr. Cruz's conduct toward his son was

willful or unlawful.

Authority: Conn. Gen. Stat. § 53-21; Borden & Orland, Conn. Criminal Jury Instructions, Vol. 5.

      14g.   Disorderly Conduct

A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise;

In order to support a conviction for disorderly conduct, the defendant's predominant intent must be to cause inconvenience, annoyance or alarm, rather than to exercise his constitutional rights.

Subdivision (1) prohibits physical fighting, and physically violent, threatening or tumultuous behavior. Subdivision (2)--"by offensive or disorderly conduct, annoys or interferes with another person"--means: by conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears or sees it, disturbs or impedes the lawful activity of that person.

In order for the defendants to have probable cause to believe that the Mr. Cruz committed this crime, there would have to be facts and circumstances at the time of arrest indicating that he (1) engaged in physically violent behavior, or (2) his conduct was grossly offensive to a person who actually overheard or saw it, under standards of the average person in the community, or (3) he made unreasonable noise, given the circumstances.

Authority: Conn. Gen. Stat. § 53a-182; *State v. Indrisano*, 228 Conn. 795 (1994).

      14h.   Reckless Endangerment

Mr. Pianka was charged with reckless endangerment, which occurs when a person "recklessly engages in conduct which creates a risk of physical injury to another person." In order for the defendants to have probable cause to believe that the Mr. Pianka committed this crime, there would have to be facts and circumstances at the time of arrest indicating that 1) Mr. Pianka engaged in

conduct that created a risk of physical injury to another person, and 2) Mr. Pianka's conduct was reckless. In regards to criminal statutes, a person acts 'recklessly' when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. Authority: 53a-64; 53a-3(13); *State v. Pemberton*, 38 Conn. Supp. 619, 621 (1982).

15.    <u>Unlawful Actions of Police Officers</u>

A person can be found guilty of interfering with a police officer or assault on a peace officer only if that officer was acting "in the performance of his duties" at the time of the alleged interference. Whether or not an officer is acting in good faith in the performance of his duty must be determined in the light of that purpose and duty and is a question for you, the jury, to determine, on the basis of all the circumstances of the case. The test is whether the officer is acting within the compass of what he is employed to do, or is engaging in a personal intent or frolic of his own.

In this regard, police misconduct is relevant in determining whether a police officer is acting "in the performance of his duties." An officer cannot be found to be acting within the scope of his duties unless he was acting legally at the time of the alleged interference. For example, an officer is not acting within the scope of his duties when he makes an unlawful warrantless entry into a home. Likewise, a police officer is not acting within the scope of his duties if he is using excessive force and/or assaulting the defendant.

Authority : <u>State v. Anonymous</u>, 34 Conn. Supp. 531 (1977); <u>State v. Privatera</u>, 1 Conn. App. 709 (1984); <u>State v. Torwich</u>, 38 Conn. 306, 316 (1995); <u>State v. Biller</u>, 5 Conn. App. 616, 620 (1985), cert. denied, 199 Conn. 803, cert. denied, 478 U.S. 1005 (1986); In re Adalberto S., 27 Conn. App. 49 (1992).

23

16.     Obstructing an Unlawful Entry into Home or Immediate Environs

Under law dating back at least one hundred years, a Connecticut citizen retained the right to

offer reasonable resistance to a police officer's unlawful entry into his home.  In such circumstances,

it is reasonable to view the governmental intrusion as especially provocative and a defendant's

resistance to entry and arrest as excusable and therefore privileged.  Therefore, with respect to entries

made without benefit of warrant, a person continues to have the right to offer reasonable resistance,

not rising to the level of assault, to an unlawful entry.  Under the United States and Connecticut

Constitutions, a police officer needs a search warrant to enter a home when not invited by the

resident, except in very narrow circumstances.

Authority: *State v. Gallagher*, 191 Conn. 433, 440-444 (1983); *Payton v. N.Y.*, 445 U.S. 573
(1980); *State v. Casanova*, 54 Conn. App. 714 (1999); *State v. Brosnan*, 221 Conn. 788 (1992); *State v. Brocuglio*, 264 Conn.778 (2003).

17.  Duty to Stop Others from Violating the Law

 Police officers have an affirmative duty to enforce the law and preserve the peace.  This includes stopping other police officers from violating the law.  A police officer may not ignore the duty imposed by his office and fail to stop other officers who violate the civil rights of a third person in his presence.  Thus, if you find that only one of the defendants violated the constitutional or civil rights of one or more plaintiff, but also find that another defendant was aware of the violation, but did nothing to prevent it, although in a position to do so, then that defendant is also liable for the unlawful act of his co-defendant(s).

Authority:      *Gagnon v. Ball*, 696 F. 2d 17 (2d Cir. 1982); *Zapica v. Bucyrus-Eric Co.*, 579 F. 2d 714, 718 (2d Cir. 1978); *Byrd v. Brishke*, 466 F. 2d 6, 11 (7th Cir. 1972); *Jennings v. Davis*, 476 F. 2d 127 (8th Cir. 1973).

18.    No Specific Intent Required

It is not necessary to find  any specific intent to deprive the plaintiffs of their civil rights in order to find in favor of the plaintiffs.  The plaintiffs are entitled to relief if and when the defendants acted in a manner which resulted in a violation of their rights.

Authority:    *Gomez v. Toledo*, 446 U.S. 635 (1980); *Pierson v. Ray*, 386 U.S. 547 (1967).

26

19.    Credibility of Police Officers

The testimony of a police officer is entitled to no special or exclusive sanctity. A police officer who takes the witness stand subjects his testimony to the same examination and the same tests that any other witness does, and in the case of police officers you should not believe them merely because they are police officers. You should recall their demeanor on the stand, their manner of testifying, the substance of their testimony, any interest they may have in the outcome of the case and weigh and balance it just as carefully as you would the testimony of any other witness. People employed by the government, including policemen, do not stand in any higher station in the community than any other person, and their testimony is not entitled to any greater weight.

Authority:    *Roberts v. Hollocher*, 664 F.2d 200 (8th Cir. 1981); *Darbin v. Nourse*, 664 F.2d
1109 (9th Cir. 1981).

THE PLAINTIFFS

BY: _____
            Jon L. Schoenhorn
            Jon L. Schoenhorn & Associates, LLC
            108 Oak Street
            Hartford, CT 06106
            THEIR ATTORNEY
            Fed. Bar. No. CT00119
            Tel: 860.278.3500
            Fax: 860.278.6393

27